United States v. Cluff, Mr. Schneider Good morning, Your Honor, it pleases the Lord. I'm Stanley Schneider, representing Curtis Cluff. We are here today seeking justice. It's a difficult case because of the plea agreement and the waiver of right to appeal. And our position is the government breached the plea agreement for several reasons. First, that the government knew from the onset of the prosecution that Curtis Cluff believed that he would not be prosecuted. That as long as he continued working as an informant, he would be free. That statement was confirmed by DEA agent Lilly at the motion for new trial hearing, who said, Assistant United States Attorney Bernardo told Cluff that as long as he worked as an informant, he would remain free. And it's an unusual set of circumstances because Mr. Cluff became an informant, worked for two and a half years, and then was shot. And it's believed that he was shot by a Houston police officer who was the target of an investigation who threatened his life. And after his life was threatened, the FBI did nothing to protect Mr. Cluff, notified Mr. Cluff that they were contacting Marcus Carrion, and did nothing to protect him once they did contact Carrion and let Carrion walk free. And then he was shot. So the panel's decision in Mahea does not really apply because for the two reasons. One is that the government knew everything. So Judge Haines, your decision in Elashi, I think it's Elashi, E-L-A-S-H-Y-I, doesn't really apply here because the government knew everything. The government knew because Cluff filed a motion to dismiss the indictment based upon the doctrine of equitable immunity because of his understanding that he kept working and the government never said. But I guess the problem to me is there's a lot of side issues to the case, but for me anyway, I can't speak for the other two judges, but for me it boils down to whether he lied during the original sentencing proceeding. And it wasn't just that he said his understanding, he also said that the AUSA was the one who told him this, and that was what I think the district judge found crossed the line. And so the question to me in my head is, it's clear to me that lying to the court during sentencing can result in losing acceptance of responsibility. However, whether he lied is a question of fact. So where do we play a role in this because the judge has already resolved the question of fact? Well, if the finding of fact are clearly erroneous, and they're clearly erroneous for a number of reasons. First is, if you read the first sentencing hearing, Mr. Clough, the district court interrupted Mr. Clough continuously. And every time he started talking, there was an interruption. And he said, who told you you would be free or not be prosecuted? And he pointed to, he said, Mr. Imparato. And then everything stopped. He never said, and he never got a chance to explain exactly what was being said. First off, if Mr. Imparato then made a statement. When we wanted to call Mr. Imparato as a witness at the motion to the trial hearing, the government objected. But you didn't appeal that. That's not an issue for appeal. We can't appeal that. We waive the right to appeal. The only thing we can appeal is the breach of the plea agreement. Well, but that's part of your evidentiary hearing on breach of the plea is this witness failing to be called. I mean, to me, that's a fairly significant thing to preclude the very guy that they had the conversation with from testifying, but you didn't raise that on appeal. So I can't really consider that. That's still a fact issue that the court can consider whether or not the findings are clearly erroneous. And the second point is, Lilly confirmed what Imparato said about Clough remaining free as long as he worked. Let me ask a question. Was your client sworn as a witness when he gave his plea? Not at sentencing, but at plea. The answer is going to be yes. He was sworn in at the original plea. When he was pled, right? Yeah, by the time he pled. And he, and he, and he, there was a plea agreement, correct, that your client swore was true. Yes. And everything. So when did your client decide to renege on the plea agreement that was sworn to? He never reneged. Well, it said he would be sentenced. He agreed to be sentenced. He said guilty to the offense and that he would be sentenced and that there was a, may have been a minimum or a maximum sentence normally contained within the plea agreements of what he was looking at. And the judge put him under oath and asked him those questions, correct, at the plea, at the plea hearing? At the time of the plea, yes, he did. Okay. So when did he change his mind? He never changed his mind, Your Honor. Okay. When he, the. I mean, he pled guilty, so how in the world could he then say at time of sentencing, oh yeah, I'm not supposed to have ever. What, what happened was he's, the, in the pre-sentence report, he was not given acceptance of responsibility initially. He admitted his guilt. He admitted it, there was a conflict between the plea agreement on 65 kilos versus 615 kilos. And because the government could not accurately determine how much drugs were involved and the government disagreed with the 615 kilos. And so the question of acceptance, so he's trying to apologize and, and accept responsibility. I said, explain why you became an informant. And he started talking about how he was arrested four or five months after the, the seizure of the 65 kilos. I think that was in October. He was arrested in January. How he immediately became an informant, how he surrendered his truck, his money, drugs to the government, and then started working on a number of cases that was passed from group to group. Different agents were working. He worked several different investigations. And so he started to explain what happened. And he then, he said, after I was shot, it was my understanding that I would, that I would be free or, or something to that effect. And Judge Hittner started questioning him about what was being said, what he meant by that. But he never withdrew the plea. He was trying to explain what happened and how he came to be where he was. And, and, and then he was cut off. But I think the point is, and I agree, I think he was cut off too much, but that isn't really the question. I think the problem is, it is inconsistent to say, I thought I was never going to be prosecuted and yet to plead guilty, which by definition means you were prosecuted. I think that's the point that's being asked. If you look at the record, we filed a motion to dismiss. On March 14th, the government filed its response. On March 15th, the court denied the motion. Then we had, we're, he was in a rock and a hard place. We couldn't go to trial, not with all the evidence and the tapes and everything against him. He had to plead guilty because he was guilty, but he had, he was accepting responsibility for what he did. And then he spent two and a half years at the beck and call of the government. Agent Lilly said he met with him 50 times and he. Okay. And he did get a 5k one, right? The difference between the sentence of nine years and what the government recommended in the 5k of that. He got the 5k, which acknowledges his assistance. The difference between a level 29 and a level 23 is significant. It's a five level swing. It's a difference of four years to nine years. Mr. Clough at the second sentencing hearing, he explained that what he was meaning was that he was told so long as he worked, as long as he was an informant, he would remain free. That's what he was trying to say. And he tried to explain that statement and he was sincere about what he was saying. Was that disputed as to whether that was exactly what he was told? No. Agent Lilly said the exact same thing. As long as he was an informant, he would remain free. And so on the record page, it's on page 36 of the record of the hearing and what Agent Lilly said, my question was that Mr. Imparato told him that he could stay free as long as he was working. That's correct. And then Agent Lilly stated he could stay out of jail as long as he was cooperating with the government. And after he was shot, no one said anything to him. He recuperated from being shot three times. A bullet was still in his chest at the time of the plea. And no one said a thing until he was shot. I tend to agree with you that I think he's been treated unfairly, but that isn't our question. We just have to decide if the government breached the plea agreement as a matter of law, in essence, because if there's any fact findings here, we have to defer to the district court. The credibility of Mr. Clough, the credibility of the agent, the credibility of just the totality of circumstances. The judge was sitting there when he made his comments that were cut off. He sat there during the arraignment that Judge Juneau referenced, et cetera. And so really you're saying as a matter of law, he didn't lie. That's your argument. Judge Haines, the question of materiality is a mixed question of law and fact. Given the initial motion to dismiss that's set out, Mr. Clough said our position is I would not be prosecuted. He put it in writing. And there was the threat made by the government that was part of our breach argument that it's a vindictiveness because he said, he's told, Mr. Impronato said, if you persist in the asserting that there was a, that you would not be prosecuted, you will not get acceptance, we won't even give you the 5k. But even after we filed the motion, after it was denied, they entered the agreement. So in this instance, given Lily's testimony, given his Clough statement at the second sentencing hearing, given the fact that the district court did not allow Impronato to testify, those factors... Well, this is why I think he should have been ordered to testify, but as I said, you didn't erase that, so I don't know that I can... But as part of the clearly, the court could consider that as part of the clearly erroneous determination, that the district court did not consider it. And those are factors that render the fact findings wrong. And just, the court has an obligation to strictly construe the plea agreement against the government. And that's what this case is about. This case is about justice. Mr. Clough put his life on the line to be an informant. He was shot, nearly killed, and then apparently the government didn't need him anymore, and they dropped him, and prosecuted him, and put him in prison. And justice demands that the court strictly construe the plea agreement against the government, give Mr. Clough acceptance because he did not lie, he didn't get the chance to really explain, because he was cut off. Yeah, but here's the, I mean, here to me is the crux. So at 178, the court says, he is here telling me, referring to Mr. Clough, he is here telling me now that the deal was that the government promised that he would get nothing. And Mr. Imperato says, who with the government? And the court says, who was it? Who promised it to you? And the defendant says, Mr. Imperato. So that's not just his understanding that as long as he cooperates, nobody's going to prosecute him. It's him being told by Mr. Imperato he would get nothing, and that was the deal. So isn't that arguably a lie, and that we would have to defer to the district court on? He then tried, later on in that same page, he's, I don't want to get anyone's stuff, and he's trying to keep talking, trying to explain what he meant, and everything stopped. I tried to speak up, and Judge Hittner said, I don't think you want me, I don't think you want to go on. Was that discussion before, was the discussion with Mr. Imperato before or after he pled? The original plea was in May of 2015, the sentencing, this is his first sentencing hearing on December 1st. But his discussion with the government that he would not be prosecuted as long as he cooperated, before or after he pled? That discussion was on January 6th, 2012, two and a half years before the plea. So after he pled under oath, and pled that he was guilty, and that the judge informed him at the time of the plea that he was going to looking at this type of sentence, and he swore that he understood all of that, there wasn't any discussion after then that he would not be prosecuted? No. But the context of what he was talking about, he was trying to explain why he should get acceptance of responsibility, why he was sorry for what he did, and why he cooperated as an informant. And that's where this all, everything fell apart. An articulate man trying to plead for mercy. You've saved time for a vote. Ms. Kaluri? May it please the court, Anna Kaluri on behalf of the United States. There's a lot going on in this case, but I agree that the issue before the court right now is a very narrow one. And the question is whether or not Mr. Clough's statement at sentencing was obstruction of justice. And the determination by the district court that it was, is entitled to deference and if it's reviewed under clear air. I'd like to go back to record page 179, where Mr. Clough points to the prosecutor and says it was him. Right before that, I know that there's some questions about whether or not the prosecutor should have testified at the motion for new trial hearing. But I will point out that the prosecutor right before that denied Clough's allegation and stated that no one, and this is before the court, before the district court, that no one made representations to Clough. He also stated that he met with Clough two times and told Clough each time that he would go to prison, but that the length of Clough's sentence was based on his level of cooperation. Those statements made by the prosecutor were reiterated by Agent Lilly when he testified at the motion for new trial hearing. That's a little different. I mean, to me, it's completely improper to have kept Mr. Imparato from testifying. I understand this thing about you have to give notice and all that kind of thing. But here he's directly a fact witness. It's not simply trying to mess with the U.S. Attorney's Office. He's a direct fact witness. He was allowed to just make these statements at the sentencing hearing, and then there was never any right of cross-examination for Mr. Clough's attorneys. So that's a concern I have. But the other concern I have is that Mr. Imparato's statements are a little bit inconsistent with Agent Lilly's actual testimony, which is more consistent with what Mr. Clough is saying, is that as long as I cooperate, I'm not going to go to jail. And then he thought once he was shot, basically, in the line of duty as a C.I., that that was that. And that is consistent with what Agent Lilly's saying. What's inconsistent is a promise by Mr. Imparato that he's never going to be charged. And that's, I think, where we got into this whole debate on R-179. I think that the prosecutor's statements and the agent's testimony are actually not inconsistent. Mr. Imparato only met with the defendant twice. And on both of those instances, he said the same exact thing. Your cooperation will go into the sentencing considerations, but you will be prosecuted. Agent Lilly, on the other hand, met with the defendant over 50 times. And each time, as you look through Agent Lilly's testimony, each time Mr. Clough said, am I going to jail today? Is today the day? And he said, no, keep cooperating. He'll stay out now. There was never any promise of no prosecution. It was just a question of whether or not this is the day he would get to go home or he would get to go to jail. So under that interpretation, as I hear you, the idea was that he would stay free as long as he was an active informant. Is that what you're saying, or do I misunderstand? No, you don't misunderstand. The agreement with Mr. Clough was that you will be prosecuted for this. And if you look at the probation officer's first calculation of his sentence, his sentence was 360 to life. So at the end of all of this, at the end of the cooperation, at the end of the plea agreement, at the end of the government fulfilling all of its obligations under the So all of the cooperation, everything that Mr. Clough did was taken into account by the prosecutor and by the court. The prosecutor had to argue with the court about going from the high end of the guideline ranges all the way down to 46 months in terms of the recommendation. So all of this was taken into consideration by the prosecutor, by the government. All of Mr. Clough's help being a cooperator was part of this entire process. Okay, I want to go back to Agent Lilly. I mean, at R243, he's asked, and Mr. Imperato said if he kept going, meaning kept cooperating, he could stay free, didn't he? Answer, he could stay out of jail as long as he was cooperating with the government. That's pretty close to what Clough said and fairly different from what Mr. Imperato said as an officer of the court, I understand, but not under oath. And so it would seem an important thing to cross-examine him on at this motion for new trial. Because even though I agree he got a 5k1, and I think that's important that he did, nonetheless, it is a big shift to go from acceptance of responsibility, which decreases your offense level, to no acceptance of responsibility plus obstruction of justice. That's a big shift. And so basically negates a good bit of the value he got from pleading guilty. I don't believe that Agent Lilly's testimony, though, is inconsistent with the fact that he would still be prosecuted. If you look at his testimony in whole, he continually says, you will not be prosecuted today. You will go home today. It is limited to that time frame, not to the prosecution in whole. And I think Agent Lilly's testimony is very clear on that, if you look at the entire thing. Yeah, but I mean, if you say, as long as I'm being a good person, I won't go to jail, then I feel like, well, I'll just keep being a good person, and that's kind of forever. So the same with the cooperation. He was going to keep cooperating, keep cooperating, keep cooperating. Then he was shot, and he thought, you know, I was shot in the line of duty, in essence. I was shot by someone who was the subject of an investigation. And so I think Mr. Clough's belief probably had some validity. The thing I'm struggling with, in this case, is that this seems sort of fact-bound. But what I'm really surprised about is that the district judge seemed to be kind of going, whoa, wait a minute, this hearing's getting out of control. Let's let everybody cool off. Let's let everybody think about it. Let's have, you know, Mr. Clough have time to talk to his lawyer. Let's have time for the ASA, who seems hearing. But by the time of the reconvening, the hearing, this is already set in stone. So it looked like the hearing was to be reconvened to allow Mr. Clough to kind of reassess what he's saying. But by that point, he's already being sort of tagged with what he said at the December 1 hearing. So how do you explain that? A few things. One, the plea agreement was between the parties. The judge was not bound by it. The judge did not have to find obstruction. The judge could have granted him acceptance of responsibility. So that was an independent determination of the district court. I think the other thing to keep in mind here is the fact, what we're looking at unfolded before the district court. He was there at sentencing. He saw all of this happen. He saw Mr. Clough make the statement. He saw the prosecutor's reaction and response to it. He presided over the first sentencing, the second sentencing, the motion for new trial hearing. He was there. All of these acts that occurred that are the basis for the alleged breach occurred before him. So he was in the prime position to determine all of this. This is a narrow question. The question is whether or not his statement that the prosecutor told him he would not be prosecuted was obstruction of justice. And the district court who was there held a hearing on this. He heard the testimony of Mr. Clough's attorney, who said that Mr. Clough never told him that he received any promises by the prosecutor this way. He only said that it was his belief that he would remain out of jail. And the belief that Mr. Clough communicated to her all occurred before his plea agreement, his plea. And when he pleaded, he acknowledged in writing and orally that there were no other promises made outside of the four corners of the plea agreement. So even though the government knew that Mr. Clough had this agreement, the assumption based on Mr. Clough's own words and his signings were that that was off the table. He pled. There was nothing outside of the four quarters of the agreement, and we moved on to sentencing. Anything else, Ms. Cleary? No, unless there are any further questions. Thank you, Mr. Schneider. You've saved time for rebuttal. Thank you. A couple things. At the second sentencing hearing, Mr. Clough tried to explain and said he would continue to work for his freedom. The government had already filed its request to withdraw acceptance and request for obstruction. The government acknowledged on that he recognized that some things that were said today were different, and it tried to explain what was being said. And the context of what Mr. Clough was saying, he says at the first sentencing hearing, he explains the meeting with the government saying my family would not be prosecuted if I became an informant. I would not be prosecuted and I would remain free. And then he said, and then after the carry-on thing and I got shot, I was under understanding that it was over for me. And then he was interrupted. So, Lilly echoed what Mr. Clough said throughout his testimony, that it was his understanding that he would remain free. And it's part of, he became an informant and the reason he should get what he did. I mean, to me, the hard thing is it looks like the district judge at the first sentencing is interrupting him, kind of like saying, you don't want to be saying anything right now because you want to, I guess, have time to talk to your lawyer, whatever. So kind of resetting it to allow everybody to cool off. But by the next, the continuation, everything's kind of already done. I mean, and so it's like he didn't get a chance to explain at the original hearing. He doesn't really, then by the time of the second hearing, it's kind of already ratio caught, if you will, that he's lied. So, but all of that, while I understand the kind of, I don't know, physics of it, I don't know that that changes the standard of review. We've still got fact findings by a district judge that the district judge is entitled to make. And even though I might have handled it differently, the other two might have handled it differently, that isn't the question. The government just said that you look at a clear error. And if you look at the court's decision in United States v. Kirkland from March 16th on application of clear error to a plea agreement, this case is a case for dealing with justice and the pursuit of justice. It's where a individual put his life on the line and tried to make amends and tried to do what was right and had a certain understanding of what was going to happen. And Agent Lilly said that Impronato told Buck twice that if he worked as an informant, he would remain free for as long as he was working. And no one said, we're finished with you as an informant as you recover for being shunned. Well, all right. So tell us what should have happened here, given the facts as you understand and contend them to be. Once he was shot, he was no longer, I suppose, operating as an informant. So what at that point should have been done in regard to judge denied the motion to dismiss, even though there was no hearing. And he'd entered his plea. He should have gotten acceptance of responsibility. He should have been sentenced to a guideline range of between 46 and 57 months, between four and five years in prison. And he should have gone off in service four or five years. That's contrary to any concept that he would always be free, isn't it? Judge Smith, once the motion was denied and we agreed to plead guilty, we waived our right to that issue. And we agreed to that when we entered our plea. And we had no expectation that he wasn't going to prison. We were arguing for probation, time served, and five years supervised release. That's what I was arguing for. But we expected that he, and we were hoping for as low a sentence as possible. So it should have been a four to five sentence. Or lower if a judge thought under 3553A that because of the work he did, because of the extensive investigations that he worked on, because of his being shot, that he deserved a lesser sentence. So what we want is a sentence within four or five years. That's fair. That's fair for Mr. Clough. That's fair under the law. And it's what justice demands. Then your client asked the judge at the time of sentencing for him to be able to withdraw his plea? No. I'm looking at the record on page 180. And asked the court to allow Clough, I guess in part to allow Clough to withdraw his guilty plea. This was after this discussion going on. Instead the court recessed the hearing, gave the parties a chance to discuss. We never asked to withdraw the plea. The government offered us to withdraw the plea, so they go to trial. But we wanted the plea agreement to be enforced. We wanted to be sentenced in the four to five year range, which is fair. All right. Thank you, Mr. Schneider. Your case is under submission.